**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 12-cv-00510-RM-KMT

ANA M. FRANCIS, an individual,

     Plaintiff,

v.

UNITED AIRLINES, INC., a Delaware corporation,

     Defendant.

---

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

     Plaintiff Ana Francis ("Plaintiff" or "Francis") brings claims against her former employer, Defendant United Airlines ("Defendant" or "United"), for discrimination and outrageous conduct.  Before the Court is Defendant's Motion for Summary Judgment (the "Motion").  (ECF No. 64.)  For the reasons set forth below, the Motion is granted.

**I.     LEGAL STANDARD**

     Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc*., 41 F.3d 567, 569 (10th Cir. 1994).  Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or, conversely, is so one-sided that one party must prevail as a matter of law.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986); *Stone v. Autoliv ASP, Inc*., 210 F.3d 1132 (10th Cir. 2000); *Carey v. U.S.*

*Postal Service*, 812 F.2d 621, 623 (10th Cir. 1987). *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986).

A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *Anderson*, 477 U.S. at 248. The Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *Quaker State Mini-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995); *Houston v. Nat'l General Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## II.   BACKGROUND

The relevant facts, viewed in the light most favorable to the Plaintiff, are as follows. Plaintiff is a black and Hispanic female who was born in 1955. (ECF No. 5 at 7; ECF No. 51 at 1.) She was employed by United as a flight attendant beginning on May 16, 1995, and ending July 5, 2011, when she was discharged. (ECF No. 5 at 7.) According to the Amended Complaint, the stated reason for Plaintiff's termination was for "not protecting company resources and supplies, misappropriate use of supplies and resources, and lack of honesty." (*Id.*) Plaintiff contends that "she was discriminated against based upon her race, national origin and age because other younger, white, and non-Hispanic employees have engaged in similar conduct without any discipline or repercussions." (*Id.*)

On June 6, 2011, Plaintiff was assigned as a standby flight attendant at Denver International Airport from 6 p.m. to 10 p.m. (*Id.*) She checked in at the coordinator desk around 5:45 p.m., and then went to the "in-flight area" located on the fourth floor of Concourse B. (Francis Dep, ECF No. 64-1 at 5-6.) While on duty, Plaintiff became nauseous, dizzy and disoriented, and tried to find the supervisor on duty, but could not. (ECF No. 5 at 7.) She left

the in-flight area, intending to go to Starbucks to purchase a bottle of water, and on the way, passed one restaurant called "It's a Wrap," which "appeared to be closing," so she did not stop there.  (ECF No. 69 at 2.)  "While Francis was aware that there were 50 to a 100 [sic] restaurants on concourse B, those restaurants were on the rotunda in the opposite direction Francis was going.  Francis' intention was to go to Starbucks because she had a gift card for purchases."  (*Id.*)

Plaintiff at some point says she approached her coordinator to purchase a bottle of water, and was told that United no longer sold bottles of water to employees.  (ECF No. 51 at 1.)  "Plaintiff then proceeded to Concourse B and found that most of the retailers were closed."  (*Id.*)  Plaintiff "never made it to Starbucks" according to her deposition because she "was feeling very weak."  (ECF No. 64-1 at 13.)  She noticed passengers deplaning a United flight at Gate B45.  (*Id.* at 14.)

Plaintiff asked the First Flight Attendant on that flight, an incoming flight from Tampa, Carol Alexander, if she could have some water to take medication, and the Ms. Alexander suggested that Plaintiff wait until the passengers had de-planed to get it.  (*Id.* at 1-2.)  "Plaintiff proceeded into the cabin and took a bottle of water [. . . ] Plaintiff also took a salad and sandwich that appeared to have been discarded by a passenger."  (*Id.* at 2.)  As a result of this incident, on June 7, 2014, Plaintiff was placed on administrative leave.  (*Id.*)  She was formally terminated on July 5, 2011.  (*Id.*)

United submitted as an exhibit an approximately eleven minute video that was taken from a fixed point just outside a United aircraft, in which Plaintiff may be observed waiting on the jetbridge for the passengers to deplane.  (ECF No. 64-2.)  After all the passengers and the flight crew deplane, Plaintiff can be seen entering the aircraft, then disappearing from view down the aisle.  (*Id.*)  She reappears shortly thereafter with something consistent in shape with plastic

containers containing food sold on aircrafts wrapped in her sweater.  (*Id*.)  She then appears to take a bottle of water from a cabinet.  (*Id*.)  The video also shows, as Plaintiff emphasizes, a white pilot exiting the aircraft with a bottle of water.  (ECF No. 69 at 3.)  This video was viewed and relied upon by United in deciding to terminate Plaintiff.[1]

Todd Ebertowski, a United Customer Service Representative, happened to come aboard the plane in connection with an unrelated customer complaint about being seated next to a customer with a service dog.  (ECF No. 69-6.)  He had a brief conversation with Plaintiff, the content of which is disputed, and reported his disagreement to a supervisor.  (ECF No. 64 at 6.)  The resulting investigation led to the discovery of Plaintiff being aboard a plane to which she was not assigned and leaving with items from that flight which did not belong to her.

Plaintiff was placed on administrative leave, and on June 8, 2011, she attended a meeting with a supervisor and her union representative.  (ECF No. 64-1 at 28.)  In connection with that meeting, Plaintiff submitted a written Flight Attendant Report in which she stated that she took "a salad and a chicken wrap" and a "bottle water" from the plane.  (ECF No. 64-4.)  She stated that she took the food from the "old-inbound galley."  (*Id*.)  Plaintiff also advised that she "would like to apologize for my unprofessional behavior."  (*Id*.)[2]

---

[1] Plaintiff objected to the Court's consideration of the video.  (ECF No. 71.)  It was submitted to the Court as an exhibit to the affidavit of Dean Whittaker, the United official who terminated Plaintiff, and was described by him as "a true and accurate copy" of the video he reviewed.  The objection is that the authenticity of the videotape (in the sense of its actual portrayal of the events of June 6, 2011) has not been established.  The objection is overruled.

[2] After June 8, 2011, Plaintiff's explanation of the location of the salad and wrap changed.  Plaintiff's latter explanation, which she maintains to date, is that she saw the salad and wrap in a clear plastic trash bag in the aisle of the plane and removed it from the garbage.  Plaintiff originally said she took the food from the galley, but at some point thereafter, she changed her description of where the food she took was, stating that "the salad and the chicken wrap were found on the floor near the forward aft bathroom of the back galley" in a plastic trash bag.  (*See* ECF No. 69 at 3.)  However, there is no dispute that Plaintiff initially advised United that these items were taken from the galley.  Nor is there any dispute that the items did not belong to her, but were the property of United.  At the hearing on this matter held on August 12, 2014, counsel for Plaintiff conceded as much.  (*See* Hearing Tr. Aug. 12, 2014 at 27 ("THE COURT: So isn't company trash, company property?  MR. ALSTON: Um, as long as it was still on that plane, yes.  THE COURT: Then she stole company property.  MR. ALSTON: Yes.  THE COURT: All right.").)

On June 28, 2011, she attended another meeting, this time with Dean Whittaker, United's Director of Inflight Services, also along with her union representatives.  (*Id*. at 28, 31.)  Mr. Whittaker terminated Plaintiff's employment by written letter on July 5, 2011.[3]  The letter advised:

> Specifically, you acted inconsistently with United Airlines' Working Together Guidelines with respect to Honesty and Professionalism when on June 6, 2011 while on standby and in the Denver International Airport (DEN); you failed to protect the property of the company from theft.  You were observed on video footage while on the passenger loading bridge at gate B45, waiting for all customers and inbound crew members to deplane.  You then boarded the aircraft at 20:41:53 MDT and based on your own admission on June 8, 2011, removed a bottle of water, a salad and a chicken wrap sandwich from the galley.  The items did not belong to you and your actions did not reflect favorably on the Company, yourself or your co-workers.

(ECF No. 64-2.)  Plaintiff has not alleged that she experienced any workplace discrimination based on race, gender, national origin, or age prior to her termination.  She has also not alleged to have had any adverse experiences with Mr. Whittaker prior to her termination.  Defendant has asserted repeatedly in both briefing and at the hearing on this matter that there were no such adverse experiences or discrimination.

## III.   ANALYSIS

Plaintiff's Amended Title VII Complaint initially brought five enumerated causes of action, which are less than clear in alleging concrete violations, so the Court has had to engage in some amount of interpretation:  (1) wrongful discharge based on race, sex, and age in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.* ("Title VII")[4]; (2) "discrimination in discipline," which the Court believes is a claim for disparate treatment based

---

[3] The Court received a letter directly from Plaintiff on August 14, 2014; it is not clear whether Plaintiff's counsel was aware of this communication.  Plaintiff's letter, which has since been filed as ECF No. 86 by the Court, recounts the events of June 6, 2011 from her perspective, and also discloses her gratitude to the Court and her beliefs as a Jehovah's Witness.  The Court has disregarded the contents of this letter, which was an *ex parte* communication made after the Court had decided this matter.

[4] Plaintiff's Amended Complaint specifically refers only to age and racial discrimination, but she also checked a box for sex discrimination, so that is addressed herein.

on race and age in violation of Title VII; (3) "genetic information," which the Court believes is a

claim for unlawful discrimination under the Americans with Disabilities Act; (4) "breach of

implied contract;" and (5) "outrageous conduct." (ECF No. 5.) Of these, only the discrimination

and outrageous conduct claims remain.[5]

Because there is no direct evidence of discrimination in this case, the *McDonnell-*

*Douglas* burden-shifting test applies to each of Plaintiff's Title VII claims, and also to her ADEA

claim. *See McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Garrett v.*

*Hewlett-Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002). Under *McDonnell-Douglas*,

Plaintiff must first establish a *prima facie* case of employment discrimination. 411 U.S. at 802.

If Plaintiff makes out a *prima facie* case, the burden shifts to Defendant to come forward with a

legitimate, non-discriminatory basis for its employment decision. *Id*. If Defendant does so, the

inference of discrimination drops out and the burden shifts back to Plaintiff. She, then, must

offer evidence to show that race (or national origin, sex or age) was a determinative factor in the

employment decision or that Defendant's non-discriminatory reason was merely pretext. *Id*. at

804.

Defendant has moved for summary judgment on all claims. The Court will address each

in turn below.

### A. Wrongful Discharge/Discrimination

Plaintiff's first cause of action is that of wrongful discharge. (ECF No. 5 at 7.) Plaintiff

also brings a claim for discrimination based on sex, race, and/or national origin, alleging that she

was treated less favorably than non-minority employees. These two claims, though presented as

---

[5] Plaintiff and Defendant filed a Joint Stipulation for Plaintiff to Dismiss the Third and Fourth Causes of Action
(ECF No. 60) on October 17, 2013. Thus, those causes of action are hereby dismissed, and will not be addressed
further herein.

distinct and separable in the Amended Complaint, are based on the same set of facts and same

adverse employment action – namely, Plaintiff's termination.

The first claim alleges that Plaintiff was placed on administrative leave and ultimately

terminated based upon the pretext that she misappropriated company resources, "even though

United has no written policy on perishable food items on terminating flight [sic]." (ECF No. 5 at

7.) Plaintiff said that she "believes she was discriminated against based upon her race, national

origin and age because other younger, white, and non-Hispanic employees have engaged in

similar conduct without any discipline or repercussions." (*Id*.) Plaintiff's second claim alleges

the same conduct, but cites Plaintiff's employment history of receiving only one disciplinary

action in 16 years, and none within 3 years, as well as an alleged United policy that states "that

any discipline actions two year or older [sic] are obsolete." (*Id*.) Plaintiff alleges that "United

violated its own policy when it considered prior obsolete discipline against the Plaintiff in

making its discharge decision." (*Id*. at 8.) She goes on to again allege discrimination based upon

race, national origin, and age, but with no additional allegations of fact beyond that "younger,

white, non-Hispanic flight attendants receive lesser discipline for the same or similar offenses."

(*Id*.) From the Court's review of the Amended Complaint, it is difficult to discern how this

claim is different from the Title VII claim for wrongful discharge. (This is especially true where

no evidence has been proffered suggesting that the termination was in any way tethered to prior

discipline.) In the Court's view, these causes of action are indistinguishable, with the second

merely re-alleging the same discrimination based upon the same grounds as the first. Thus, they

will be treated as one herein.

To establish a *prima facie* case for discrimination, Plaintiff must show: (1) she is a

member of a protected class; (2) she suffered an adverse employment action; and (3) the

challenged action took place under circumstances giving rise to an inference of discrimination. *EEOC v. PVNF, LLC*, 487 F.3d 790, 800 (10th Cir. 2007).

The first and second prongs of the *prima facie* standard are not in dispute in this case. As a black, Hispanic, and female employee, Plaintiff is a member of a protected class. Plaintiff's termination undisputedly constitutes an adverse employment action.

Thus, the only issue is whether Plaintiff has shown that her termination occurred under circumstances giving rise to an inference of discrimination. Plaintiff attempts to show an inference of discrimination in two ways: First, relying on *Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160 (10th Cir. 2000), Plaintiff argues that a *prima facie* case always is made where a member of a protected class qualified for her job establishes that she was discharged and that the job was not eliminated following discharge. Second, Plaintiff argues that she was treated differently than similarly situated younger, white, non-Hispanic employees. If she can show that similarly situated non-minority employees were treated in a more favorable manner, this gives rise to an inference of discrimination and satisfies Plaintiff's *prima facie* burden. *English v. Colorado Dep't of Corrections*, 248 F.3d 1002, 1011 (10th Cir. 2001).

Plaintiff's claim that a *prima facie* case of discrimination is established whenever a qualified person of color or other protected class is terminated and her job is not eliminated goes too far. There certainly are instances where an inference of discrimination is justified under such circumstances. A termination for convenience might give rise to such an inference. A termination preceded by targeting of the minority employee for criticism or other adverse action might suffice. Even a circumstance where the terminated employee is replaced by someone outside of the protected class may be sufficient. But none of these circumstances are present here.

This was a termination for cause stemming from an event which was captured on videotape. No evidence has been put forward to suggest that Plaintiff was targeted or had any prior adverse action taken against her by Mr. Whittaker or any other superior at United. Plaintiff cannot even establish that her replacement was not a member of her protected class. Instead, she professes that United hires "in such large volumes, it is not possible to identify the flight attendant who replaced her." (ECF No. 69 at 11.)

To the extent Plaintiff seeks to interpret *Munoz* as constituting the inflexible law of the Tenth Circuit, she goes too far. Later cases make clear that what is required is some evidence tending to support an inference of discrimination. *See Plotke v. White*, 405 F.3d 1092, 1099-1101 (10th Cir. 2005). Plaintiff's termination for cause, here, standing alone, is not enough – notwithstanding her status as a member of a protected class and her qualifications.

As for the contention that other employees were treated in a more favorable manner, Plaintiff's only support is that one white male pilot is observed on the video exiting the plane with a water bottle, and Plaintiff's assertion that "United is not aware of any flight attendants who were removed, counseled or disciplined for the removal of discarded items or trash items." (ECF No. 69 at 4.) Neither of these is sufficient to meet Plaintiff's burden of making out a *prima facie* case of discrimination. For one, United's lack of awareness of comparable discipline is not sufficient to suggest that Plaintiff was treated in a discriminatory manner here. She does not and cannot deny that she took water and food, and that that was the avowed reason for her termination. She points the Court to no other instance where Mr. Whittaker was aware of comparable conduct involving a flight attendant's removal of United property – trash or otherwise – from a flight without imposition of discipline. She focuses on making the argument that United's termination rationale was pretextual, but in doing so, she misses the first step,

wherein she must offer or allege some factual evidence that would give rise to an inference of discrimination, and she has not done so here.

As for the pilot, his actions and lack of discipline do not establish Plaintiff's *prima facie* case either.  United submitted an affidavit from Mr. Whittaker with respect to the pilot issue. (ECF No. 64-2.)  That affidavit remains unchallenged as it pertains to the pilot.  Mr. Whittaker advises that United provides bottled water to its pilots before flights.  United has also advised that, additionally, pilots can and do obtain water during flights.  (ECF No. 69-9.)  Mr. Whittaker advises also that he does not supervise pilots.  Thus, pilots leaving planes with water is not a comparable situation to flight attendants – much less flight attendants not assigned to a flight. And, of course, the pilot did not take food.  But even if pilots and flight attendants were similarly situated employees – which they are not – Mr. Whittaker does not supervise pilots.  Thus, any difference in potential discipline, assuming cause existed, would not give rise to an inference of discrimination on the part of Mr. Whittaker in his dealings with Ms. Francis.

Plaintiff has failed to meet her burden of a *prima facie* case under the *McDonnell-Douglas* analysis.  On this basis alone, Defendant is entitled to summary judgment.  Because Plaintiff has failed to show that she was treated differently than any similarly situated younger employee, or otherwise proffer any evidence which would support an inference of discrimination based on age, the Court finds that Plaintiff has failed to meet her *prima facie* burden as to the ADEA aspects of her claims as well.

Although this Court can and does find that Plaintiff's claims do not meet the first step of the *McDonnell-Douglas* test, I will nonetheless touch on pretext for analytical completeness. Once the plaintiff establishes a *prima facie* case (which, as shown above, Plaintiff has not done here), the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for

the adverse employment action.  *Jaramillo v. Colorado Judicial Dep't*, 427 F.3d 1303, 1307 (10th

Cir. 2005).  Here, Defendant has met that burden through submission of the videotape, Plaintiffs'

written statement, and the termination letter, amongst other evidence.  Defendant's legitimate,

non-discriminatory reason was that United believed that Plaintiff took water and food that did

not belong to her from an aircraft to which she was not assigned.  It based its decision on the

videotape and on statements Plaintiff made in writing on June 8, 2011.  Whether or not United

was hasty, mistaken, disproportionate, or anything else, it clearly had a non-discriminatory

reason to do what it did.  That is all that the law requires, and United has met its burden even if

the *McDonnell-Douglas* analysis were able to proceed to the second stage.  Accordingly,

Plaintiff would be required to show that the stated reasons were pretextual.

   Plaintiff attempts to establish pretext in one of three ways.  First, Plaintiff alleges a

change in position by United, claiming that at various points in time post-termination, United

referred to the food and water as items for resale and at other times not.  (*See* ECF No. 69 at 10,

18.)  Plaintiff believes that this establishes that the proffered reason for termination is false.  This

difference in description is insignificant.  *See Hardy v. S.F. Phosphates Ltd. Co.*, 185 F.3d 1076,

1081 (10th Cir. 1999).  Plaintiff was terminated for taking items that did not belong to her, and

which counsel admitted belonged to United.  *See* note 2, *supra*.  Second, Plaintiff attempts to use

her claim that the food items were garbage as a way to establish pretext.  Alleging that United

lacks any policy regarding "garbage," Plaintiff claims that termination for taking garbage –

especially in the absence of a prohibitory policy – is facially pretextual.  (*See* ECF No. 69 at 15.)

Plaintiff overlooks the fact that she was terminated for matters reflected on videotape and as

admitted in her original written statement.  In her written statement, she admitted that she took

items which did not belong to her from the "galley."  Plaintiff's changing explanations of her

conduct do not create evidence of pretext. Finally, Plaintiff alleges an inadequate investigation in that the flight attendant who supposedly told Plaintiff that she could get water was not interviewed. However the investigation is characterized, it was not superficial. United met twice with Plaintiff, involved her union, and based its decision on a videotape and Plaintiff's own statements. Thereafter, an appeal process involving Plaintiff's union representatives was also conducted. (*See* ECF No. 69-9 at 4.) Such conduct simply does not suggest pretext.

Plaintiff has failed both to establish a *prima facie* case of discrimination and to overcome United's legitimate non-discriminatory reason for termination. Thus, Defendant's Motion for Summary Judgment is granted with respect to the discrimination claims.

## B.       Outrageous Conduct

Plaintiff also sues under a cause of action she labels "outrageous conduct," alleging that "Defendant's conduct in the termination of Plaintiff Francis was so outrageous and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." (ECF No. 5 at 9.) This claim also alleges that "the Defendant intentionally and recklessly caused the Plaintiff to suffer emotional distress." (*Id.*)

Plaintiff's final claim is devoid of any factual allegations, much less evidence, in support of an intentional infliction of emotional distress claim. It appears to the Court that this final claim is nothing more than a re-casting of her prior causes of action as a new and distinct tort claim. Indeed, Plaintiff's only allegations supporting this claim are that "Defendant had no policy on the use of disposable items" and that "Defendant terminated the Plaintiff for allegedly taking food that was not for resale and by law would have been disposed." (*Id.*) These facts were already considered and fully addressed in the sections on the prior claims, above. Since Plaintiff fails to allege any new facts or assert any different and distinct theory of liability as to

this claim, the Court finds that it is sufficiently addressed by the above analysis regarding her prior claims.

Accordingly, the Court finds that Plaintiff has failed to show a trial-worthy issue as to any "outrageous conduct" or intentional infliction of emotional distress claim.  Defendant's Motion for Summary Judgment is also granted as to Plaintiff's final claim.

## IV.  CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment is GRANTED.  The Clerk shall enter judgment in favor of Defendant on all claims.  Costs shall be taxed against Plaintiff.

Dated this 21st day of August, 2014.

BY THE COURT:

RAYMOND P. MOORE
United States District Judge